THOMPSON *v.* MANHATTAN RY. Co. *et al.*[1]

THOMPSON *et al. v.* SAME.

*(Common Pleas of New York City and County, General Term.* February 10, 1890.)

1. ESTATES—RIGHTS OF LIFE-TENANTS AND REMAINDER-MEN.
   An action for damages to abutting property caused by the operation of an elevated railroad, and to enjoin its further use, can be maintained by the tenant by the curtesy and the remainder-men of the premises obstructed.
2. SAME—INJURY TO REMAINDER—MEASURE OF DAMAGES.
   The damage to the remainder is to be ascertained by taking the damage to the fee and apportioning it between the life-tenant and the remainder-men according to the annuity tables.
3. TRIAL—OBJECTIONS TO EVIDENCE—ERRORS CURED.
   Error in allowing witnesses for plaintiffs to testify what, in their judgment, would be the value of the premises if the railroad had not been constructed, is not prejudicial to defendant, where similar evidence was admitted in its behalf.
4. ELEVATED RAILROADS—INJURY TO ABUTTERS—EVIDENCE.
   Testimony of a witness as to what rent he paid for premises in an adjacent street, "not on the line of the railroad," is properly rejected where it has not been shown under what circumstances he occupied the premises, and why the landlord was induced to receive the rent he did.
5. SAME—EXCESSIVE DAMAGES.
   Where it appears that for the two years immediately prior to the construction of the road the property let for $3,900, and that after the road went into operation the rents were reduced to about $3,000, an award of $25,000 is excessive.

Appeal from equity term.

Two actions, one by William W. Thompson, and the other by Pell Thompson, Mary G. Thompson, and Clendenen Thompson, against the Metropolitan Elevated Railway Company, the New York Elevated Railway Company, and the Manhattan Railway Company, to recover for damage done to their premises by the construction and operation of an elevated railroad in the street in front thereof. The court excluded testimony of a witness, offered by defendants, as to what rent he paid for premises in an adjacent street, not on the line of the railroad. Judgments for the respective plaintiffs, from which defendants appeal.

Argued before BOOKSTAVER and BISCHOFF, JJ.

*Davies & Rapallo,* (*Edward S. Rapallo* and *Brainard Tolles,* of counsel,) for appellants. *John A. Weeks, Jr.,* for respondents.

BOOKSTAVER, J. These two actions were tried at the same equity term, by the same judge, in relation to the same premises; and a judgment was rendered in both at the same time. They may therefore with advantage be considered together. In the year 1870, Mary Clendenen Thompson, wife of the plaintiff William W. Thompson, died intestate, seised and possessed of the premises No. 168 Pearl street, and left her surviving, her husband, and Pell Thompson, Mary G. Thompson, and Clendenen Thompson, issue of said marriage and her only heirs at law. In April, 1888, William W. Thompson, as tenant by the curtesy, commenced his action in equity against the elevated railroads in front of the premises, for the loss of rents, and for an injunction restraining the defendants until his future damages should be ascertained and paid; and the plaintiffs in the second action also commenced their action in the same year against the elevated railroads in front of said premises, for injury to their inheritance, and demanded an injunction and damages.

The court, in the seventieth paragraph of its decision in the first action, and the seventy-fifth paragraph of its decision in the second action, has found that the Metropolitan Elevated Railway Company has never constructed, nor taken any part in the construction of, an elevated railway in Pearl street, in front of, and abutting upon, the premises described in the complaint; and in

[1] Modifying 6 N. Y. Supp. 929.

the seventy-first paragraph of its decision in the first action, and the seventy-sixth paragraph of its decision in the second action, the court has found that the Metropolitan Elevated Railway Company has never maintained nor operated, nor taken any part in the maintenance or operation of, an elevated railway in Pearl street, in front of, and abutting upon, the premises described in the complaint. The only allegations of the complaint relative to the defendant the Metropolitan Elevated Railway Company are those which charged upon it a connection with the construction, maintenance, and operation of the railway. No amendment of the complaint was asked for or granted upon the trial. The allegations of the complaint with respect to the Metropolitan Elevated Railway Company are directly negatived by the findings of the court. The only ground upon which it can possibly be claimed that the Metropolitan Elevated Railway Company should be enjoined from maintaining a railroad which it does not own, and in which it never had any interest, is that it threatens to take part in the maintenance or operation of the railway complained of. This is not alleged in the complaint, nor has the trial judge found it to be true. It therefore follows that the judgment must be reversed in both actions as to the defendant the Metropolitan Elevated Railway Company, (*Kane* v. *Railway Co.*, 6 N. Y. Supp. 526,) with costs of appeal, and equitable proportion of the disbursements.

It is claimed on the part of the appellant that the court erred in allowing witnesses to testify what, in their judgment, would be the value of the premises in question if the elevated railroad had not been constructed, and that the opinion of the court of appeals in *McGean* v. *Railway Co.*, 22 N. E. Rep. 957, condemns the admission of such testimony. But as was well said in that case, and the remark is equally applicable to the present: "The trial seems to have been conducted on both sides, and more particularly on that of the defendant, upon the theory that opinions were admissible as to rental value of the premises, and causes which affected it." The fact is that for a long time, in nearly all of these damage cases, such testimony was admitted, both as to the rental and fee value, although it must be conceded that it was very unsatisfactory, and could aid the court but little in arriving at a conclusion upon the damages to any particular piece of property; but we do not see how the admission of such evidence, especially when it was admitted on both sides, could have worked injustice to the defendant.

Appellants also contend that the court erred in rejecting the testimony of a witness named Mayer as to what rent he paid for certain premises in Water street. The defendants, we think, had not laid sufficient foundation for this testimony. It had not been shown under what circumstances he occupied the premises in Water street, or why the landlord was induced to receive for such premises the rent he did. The other objections to the admission or exclusion of evidence we do not regard as materially affecting the result in these actions.

The appellants also contend earnestly that none of the plaintiffs should be allowed to maintain these actions, because they, as abutting owners upon Pearl street, had no fee in that street, and consequently could not have been deprived of any property right by reason of the construction of the railroad complained of; also, that the plaintiffs in the second action, being remainder-men only, could not maintain an action in equity to restrain the operation of defendant's railroad. The learned chief judge who tried these cases overruled both objections, and, we think, in his opinion has clearly established the right of the plaintiffs in both actions to maintain the same, and also laid down the proper rule by which to determine how the damage should be proportioned between the tenant by curtesy and the remainder-men. But the amount which he fixed for the total damages to the premises, to-wit, $25,000, seems to us excessive. The property is situated on the south-east corner of Pearl and Pine streets, with a frontage on the former of 27 feet 7 inches, and a depth on the latter of 47 feet 3 inches, making all together 1,320 square feet, or a little

more than half of an ordinary city lot. From 1868 to 1870 this property let for $5,350; for the years 1870-71, it let for $3,350 only, (and the reason assigned in the testimony for the diminution in this year was the fact that the first floor was unlet;) for the year 1871-72, being the year before the panic, the entire property let for $4,250, and this it continued to produce until 1875-76. The testimony does not clearly show the cause of this reduction in the rent; but it was long before the erection of the elevated railroad, and shows a loss in the rents from 1868-69 of over 20 per cent., which could in no way be attributed to the actual or threatened construction of the elevated railroad, nor even to the panic, for the reduction took place before that had set in. For the years 1876-77, being the year immediately prior to the construction of the elevated railroad, the entire property let for $3,900. After the elevated railroad went into operation, the rents have varied somewhat, but averaged between $2,800 and $2,900 per annum, and amounted to about $3,000 when the building was fully occupied. Now, if we allow 10 per cent. as the ratio between the rental and fee value of the premises in 1868-69, the property then was worth $50,000, and this is what the experts, with considerable unanimity, fixed the price at; while allowing the same ratio for 1871-72 would make the value of the premises $4,250, due to some other cause or causes than the effect of the panic or the building of the road. The reduction from $4,250 to $3,900 would clearly be attributable to the effect of the panic, and that alone. The subsequent reduction, from $3,900 to $3,000, may be fairly attributed to the effect of the construction and operation of the elevated railroad, and allowing the same ratio of 10 per cent., would show that the damage to the fee value caused by the road simply would be $9,000 only, leaving out of view any natural appreciation of the property arising from the general increase of values in this city. But the witnesses both for plaintff and defendant testify that the present ratio between rental and fee value varies from 7 per cent. to 9 per cent. If we take an average of 8 per cent., then the damage to the fee value would be $7,200, which would represent the actual damage to the property, were we not to take into consideration the general appreciation of values. Exactly what this appreciation is, is very hard to determine, from the nature of things, and especially from the evidence in this case. The building is all the while growing older, and needing repair, while the ground is appreciating in value. We think that this appreciation cannot be more than seven or eight thousand dollars, and that fifteen thousand dollars would fully cover all the damages to the fee in both of these cases, and that therefore the judgments in each case should be reversed, and a new trial had, unless the plaintiffs in each case will stipulate to reduce their judgments proportionately; and if this stipulation is given the judgments should be affirmed, for the reduced amount, as to the defendants other than the Metropolitan Railway Company, without costs.